IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LETICIA MISSEME, *et al.*, | * |
| Plaintiffs, | * |
| v. | *  Civil Case No. SAG-22-1492 |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | * |
| Defendant. | * |

**MEMORANDUM OPINION**

Plaintiffs Leticia Misseme ("Misseme") and her non-citizen husband, Andrew Khonje ("Khonje") (collectively "Plaintiffs"), filed a Complaint against United States Citizenship and Immigration Services ("USCIS"), appealing a decision that Khonje had previously entered into a fraudulent marriage and was therefore ineligible for classification as Misseme's "immediate relative" for immigration purposes. ECF 1. The administrative record has now been filed. ECF 14. USCIS filed a motion to dismiss, or, in the alternative, for summary judgment. ECF 15. Plaintiffs filed an opposition, ECF 16, and USCIS filed a reply, ECF 19. This Court has carefully reviewed the record and filings and has determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, USCIS's motion, construed as a motion for summary judgment, will be granted.

I.      **FACTUAL BACKGROUND**

The facts contained herein are taken from the administrative record and are taken in the light most favorable to Plaintiffs, the non-moving party. On October 4, 2013, a woman named Sherry Maddie filed a Form I-130 seeking to have Khonje, her then-husband, granted an immigrant visa as an immediate relative. CAR 143–75. In support of the petition, Maddie submitted

documentary evidence consisting of a single, one-month bank statement reflecting limited banking activity, and copies of two small life insurance policies for Maddie and Khonje naming one another as beneficiaries, without evidence that any premiums had been paid. CAR 148–75. USCIS deemed that documentary evidence insufficient to show that Maddie and Khonje had a bona fide marriage. CAR 40–43, 190–93, 215–217.

USCIS scheduled separate interviews, under oath, for Maddie and Khonje on April 17, 2014. CAR 117–34. During those interviews, USCIS questioned both interviewees about, for example, the details of their wedding proposal and their marriage ceremony. CAR 117–34, 192, 216. While both Maddie and Khonje identified the same restaurant as the site of their proposal, Maddie described the proposal as occurring while they were alone at the table, stating that Khonje gave her a diamond ring without getting down on one knee. CAR 118, 128, 192. In contrast, Khonje stated that he proposed in the parking lot outside the restaurant accompanied by two friends, by getting down on one knee and presenting Maddie a plain silver band. CAR 118, 128, 192. Similarly, their descriptions of their wedding differed, with Maddie stating that they were married in the office of a Justice of the Peace and Khonje stating that they were married in a wedding chapel. CAR 118, 128, 192. They also identified different hotels as the site of their honeymoon and provided different descriptions of their celebrations of Christmas 2013, their process for moving in together, and whether Khonje drove a car. CAR 123, 125, 132, 131.

Because Khonje had been interviewed first, at the end of Maddie's interview, the USCIS agent told Maddie there had been numerous discrepancies in their statements, and informed her that the documentary evidence the couple had submitted was insufficient. CAR 124–25, 190, 192. Maddie then admitted in a sworn statement that she met Khonje through a friend and, "I married Andrew [Khonje] so that he could get his Green Card." CAR 195. USCIS denied Maddie's I-130

2

petition on May 21, 2014, citing the discrepant interview testimony and the lack of sufficient documentation to establish a bona fide marital relationship. CAR 215–18. Maddie and Khonje subsequently divorced on March 7, 2016. CAR 53.

Misseme and Khonje married just five weeks later, on April 14, 2016. CAR 44, 51. And on August 16, 2016, Misseme filed an I-130 petition naming Khonje as beneficiary. CAR 44–116. On September 24, 2017, USCIS issued a Notice of Intent to Deny ("NOID") as to Misseme's petition, noting that while the evidence sufficed to show a bona fide marriage between Misseme and Khonje, Khonje's prior marriage to Maddie to evade immigration laws precluded USCIS from granting the Misseme petition. CAR 35–37; *see also* 8 U.S.C. § 1154(c) ("[N]o petition shall be approved if . . . the alien has previously . . . sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws."). The NOID described the reasons for USCIS's belief that the Maddie-Khonje marriage had been fraudulent, including the inadequate documentary evidence, the inconsistent statements during the interviews, and Maddie's sworn statement that the marriage was entered for immigration purposes. CAR 35–37. The NOID invited Misseme to present additional evidence that the Maddie-Khonje marriage had been bona fide, but noted that if Misseme could not satisfy her burden of proof, USCIS would deny the I-130 petition. CAR 35, 37.

In response, Plaintiffs' counsel submitted a letter containing legal arguments about the process, and an affidavit from Khonje with only one substantive line stating, "Myself and my ex-wife, Sherry Maddie, had a real bona-fide marriage." CAR 29–31. USCIS deemed those responses unpersuasive, because the attorney's letter did not cite any actual evidence to rebut the evidence that had been cited in the NOID, and Khonje's affidavit simply asserted, but did nothing to prove,

the legitimacy of his prior marriage. CAR 25. Thus, on April 17, 2018, in the Misseme-Khonje case, USCIS denied the Form I-130 request. CAR 23–26. Plaintiffs Misseme and Khonje appealed USCIS's denial to the Board of Immigration Appeals ("BIA"), which affirmed the denial. CAR 2–3.

Plaintiffs now ask this Court to reverse the BIA's decision. In connection with the instant lawsuit, Plaintiffs submitted for the first time an October 27, 2022 affidavit from Maddie, in which she asserts that her marriage to Khonje was bona fide and that the investigating USCIS officer forced her in 2017 to write the sworn statement attesting to marrying Khonje to procure him a green card. ECF 16-4. She expresses an intent to retract her "false statement." *Id.* at 4. Plaintiffs also cite to an unrelated immigration case where other petitioners allege the same type of misconduct by the same USCIS officer. ECF 16-6.

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Although USCIS filed its motion alternatively as a motion to dismiss or motion for summary judgment, because the administrative record has already been filed and both parties have submitted evidence in support of their filings, it is appropriate to adjudicate this motion as one for summary judgment. *See Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dept. of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007) (citing *Citizens for the Scenic Severn River Bridge, Inc. v. Skinner*, 802 F. Supp. 1325, 1332 (D. Md. 1991), *aff'd,* 1992 WL 180138 (4th Cir. July 29, 1992)) (noting that claims under the Administrative Procedures Act ("APA") "are adjudicated without a trial or discovery, on the basis of an existing administrative record" and are therefore "properly decided on summary judgment."). Moreover, "[t]he standard set forth in Rule 56 of the Federal Rules of Civil Procedure . . . 'does not apply because of the limited role of a

4

court reviewing the administrative record.'" *Johnson v. Sessions*, Civ. No. RDB-15-3317, 2018 WL 2762562, at *5 (D. Md. June 8, 2018). "[R]eview of the administrative record is primarily a legal question." *Citizens for the Scenic Severn River Bridge*, 802 F. Supp. at 1332. A reviewing court can find agency action unlawful only under limited circumstances, including when the challenged act is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Friends of Back Bay v. U.S. Army Corps of Engineers*, 681 F. 3d 581, 586–87 (4th Cir. 2012) (quoting 5 U.S.C. § 706(2)(A)). The agency action is presumed valid and the Court's review under the APA is highly deferential. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 135, 1400 (4th Cir. 1993)). Where, as here, the agency has conducted formal agency proceedings, the Court reviews the record for substantial evidence, and "an agency ruling must be upheld if there is substantial evidence to support it."[1] *James City Cnty. v. EPA*, 12 F.3d 1330, 1337 n.4 (4th Cir. 1993).

## B. IMMIGRANT VISAS AND THE APA

An immigrant visa is required for an alien seeking to immigrate to the United States. *See* 8 U.S.C. §§ 1151–54. Immediate relatives of a U.S. citizen, including parents, children, and spouses, can be entitled to an immigrant visa. 8 U.S.C. § 1151(b)(2)(A)(i). To seek such a visa, the citizen-spouse must file Form I-130, "Petition for Alien Relative," and must attach documentation to establish the relationship between the citizen and the alien. 8 C.F.R. § 204.1(a)(1). USCIS then conducts "an investigation of the facts in each case" to determine the validity of the immediate relative relationship. 8 U.S.C. § 1154(b). The petition must be denied if the marriage is fraudulent.

---

[1] While other courts have used the "arbitrary and capricious" language instead of "substantial evidence," the Fourth Circuit has explained, "with respect to review of factfindings, there is no meaningful difference" between those two standards. *GTE S., Inc. v. Morrison*, 199 F.3d 733, 745 n.5 (4th Cir. 1999).

*See Matter of Laureano*, 19 I&N Dec. 1 (BIA 1983) (holding that a fraudulent marriage will not be recognized for immigration purposes). And, as noted above, Congress statutorily prohibited the grant of an immigrant visa to any person who previously sought an immigration benefit via a fraudulent marriage, even if their current marriage is legitimate. 8 U.S.C. § 1154(c); *see also Akinjoiola v. Holder*, ELH-12-2597, 2014 WL 641702, at *7 (D. Md. Feb. 14, 2014) ("[E]ngaging in marriage fraud forecloses the grant of a visa petition, even if the later marriage is unquestionably bona fide."). The BIA requires that a finding of a fraudulent marriage must be supported by "substantial and probative evidence"[2] of the marriage's invalidity, and the BIA must conduct a *de novo* review of the record and conclusions of USCIS. 8 C.F.R. § 204.2(a)(1)(ii) (requiring "substantial and probative evidence"); *id.* § 1003.1(d)(3)(iii) (requiring *de novo* review); *see Matter of P. Singh*, 27 I. & N. Dec. 598, 598 (BIA 2019). USCIS may rely on any relevant evidence in assessing the validity of a marriage. *Matter of Tawfik*, 20 I&N Dec. 166, 168 (BIA 1990) ("In making that adjudication, the district director may rely on any relevant evidence . . . involving the prior marriage."). If it identifies evidence suggesting a fraudulent marriage, it typically sends a NOID to the petitioner. 8 C.F.R. § 103.2(b)(8)(iv). The NOID must be in writing and must "specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." *Id.* The purpose of the NOID is to afford the applicant an "opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." § 103.2(b)(16)(i). The burden then shifts to the petitioner, who must produce

---

[2] "The Federal court cases that have addressed marriage fraud do not clearly differentiate between the 'substantial evidence' standard of judicial review and the 'substantial and probative evidence' standard of proof we apply in section 204(c) cases." *Matter of P. Singh*, 27 I. & N. Dec. at 604.

6

evidence sufficient to overcome the agency's conclusion and establish a bona fide marriage. *See Johnson*, 2018 WL 2762562, at *6; *see also Matter of Kahy*, 19 I&N Dec. 803, 806–07 (BIA 1988) (holding that "where there is evidence in the record to indicate that the beneficiary has been [involved] in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage."). If the petition is denied, an applicant may file an appeal to the BIA, which is a component of the United States Department of Justice. 8 C.F.R. § 1204.1.

The BIA's decision on the Form I-130 petition is then subject to review by a district court. "The courts of appeals are granted jurisdiction to review final orders of removal, 8 U.S.C. § 1252(a)(1), and final orders in cases such as the one before us are generally made by the BIA. . . ." *Camara v. Ashcroft*, 378 F.3d 361, 366 (4th Cir. 2004); *accord Huaman-Cornelio v. BIA*, 979 F.2d 995, 999 (4th Cir. 1992). Therefore, this Court reviews the BIA's decision as the final order. It reviews USCIS's opinion only when the BIA adopts it without changes, *cf. Camara*, 378 F.3d at 366, or adopts it with only supplemental reasoning, *see Barahona v. Holder*, 691 F.3d 349, 353 (4th Cir. 2012).

Under the APA, a court may only set aside agency findings and conclusions found to be "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). That standard is deferential, meaning that the reviewing court "should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). And only the administrative record, including all the materials before the agency at the time of its decision, can be considered in the Court's review. 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Court does not substitute its judgment for the agency's or reweigh the evidence, so long as the agency's conclusion was reasonable. *See, e.g.*, *Asamoah v. Napolitano,*

Civ. No. RDB-10-0470, 2010 WL 5095353, at *4 (D. Md. Dec. 8, 2010) (holding that the agency's decision "will stand if the record reveals a rational basis for the[] decision") (citing *Oddo v. Reno*, 175 F.3d 1015 (4th Cir. Mar. 29, 1999)).

### III.   ANALYSIS

Plaintiffs' Complaint asserts four claims for relief under the APA: Count One argues insufficient evidence to support the agency's determination; Count Two contests the failure to produce derogatory evidence; Count Three contends that Plaintiff's due process rights were violated; and Count Four suggests that the BIA employed an incorrect standard of review. Each argument is addressed below.

#### A.  SUFFICIENCY OF THE EVIDENCE

To determine whether the BIA had substantial evidence for its conclusion that the marriage was fraudulent, this Court looks to the BIA's opinion and the evidence cited therein. The BIA premised its ruling on Maddie's sworn statement, which it specifically noted to be unrecanted. ECF 16-9 at 10. It further noted that Plaintiffs "did not submit sufficient evidence to overcome the substantial and probative evidence of record indicating the beneficiary's prior marriage was entered into for the purpose of evading the immigration laws." *Id.* The BIA determined that Khonje's contrary affidavit (the one-line 2017 affidavit submitted to counter the evidence before USCIS) "is self-serving, and of limited probative weight." *Id.* at 11. Finally, the BIA incorporated "the reasons stated in the NOID." *Id.* at 10. That evidence, in totality, constitutes ample substantial evidence of marriage fraud.

Plaintiffs appear to argue that the BIA should have held an evidentiary hearing to allow the examination of witnesses in its presence. The BIA, however, "function[s] as an appellate body charged with the review of . . . administrative adjudications." 8 C.F.R. § 1003.1(d)(1). In fact, the

regulations specify that the BIA will conduct a *de novo* review of the administrative record and "will not engage in factfinding in the course of deciding cases." *Id.* § 1003.1(d)(3)(iv)(A). Moreover, the BIA has no leeway to consider any new evidence that a party wishes to submit. § 1003.1(d)(7)(v).

Plaintiffs now contend that the new evidence they present to this Court undermines the evidence the BIA considered. However, this Court's review is confined to the record before the agency. *See* 5 U.S.C. § 706; *Camp*, 411 U.S. at 142. Plaintiffs' belated allegations of misconduct by a USCIS officer are insufficient to rebut the presumption of regularity that attaches to the official acts of public officers. *See United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926). Such a finding would require a significant showing of impropriety that has not been made here, given Plaintiffs' failure to raise any hint of improper conduct before the BIA. Accordingly, the new evidence cannot be properly considered in this APA appeal.

### B.  FAILURE TO PRODUCE DEROGATORY EVIDENCE

Plaintiffs further allege that the BIA's determination was unlawful because the agency violated 8 C.F.R. § 103.2(b)(16)(i)–(ii) by failing to provide a copy of the relevant interview reports to them for their response, thus rendering the BIA's decision arbitrary and capricious or otherwise not in accordance with the law. Specifically, Plaintiffs believed USCIS should have given them Maddie's sworn statement and the Immigration Officer's notes from his interviews with Maddie and Khonje.

The governing regulations simply require that an applicant or petitioner be advised of any derogatory information to be considered by USCIS and be afforded an opportunity to rebut that information before the agency's final decision is rendered. 8 C.F.R. § 103.2(b)(16)(i). While the Fourth Circuit has not yet opined on this issue, all circuit courts to have considered the question,

and two district courts within the Fourth Circuit, have held that the regulations do not require the agency to provide all original evidence or records containing derogatory information, so long as the information itself is sufficiently conveyed. *See, e.g.*, *Zizi v. Field Office Director*, 753 Fed. Appx. 116 (3d Cir. 2019) ("Contrary to Appellants' argument, § 103.2(b)(16) does not require the Government to provide 'actual documents.' Instead, the regulation requires only that petitioner 'be advised' of derogatory information and 'offered an opportunity to rebut the information and present information in his/her own behalf.'"); *Sehgal v. Lynch*, 813 F.3d 1025, 1031–32 (7th Cir. 2016) (stating that summaries can satisfy § 103.2(b)(16)); *Brinklys v. DHS*, 702 Fed. Appx. 856, 861 (11th Cir. 2017) (same); *Mangwiro v. Johnson*, 554 Fed. Appx. 255, 261 (5th Cir. 2014) (same); *Wells v. Cuccinelli*, Civ. No. 4:19-1099-MGL, 2019 WL 2578630, at *6 (D.S.C. June 24, 2019); *Owusu-Boakye v. Barr*, 376 F. Supp. 3d 663, 657 (E.D. Va. 2019).

In this case, the NOID sent to Misseme on September 25, 2017 described three distinct bases for the finding that the Maddie-Khonje marriage had not been bona fide: (1) Maddie's sworn statement that she had married Khonje so he could get his green card; (2) the lack of sufficient documentary evidence of a bona fide marriage; and (3) the separate testimony provided by Maddie and Khonje in their April 17, 2014 interviews. ECF 16-8 at 3–4. The NOID afforded Misseme 30 days to submit any evidence in rebuttal to those facts. The summary of derogatory evidence in the NOID, then, complied with § 103.2(b)(16), rendering the agency's action lawful.

### C.  PROCEDURAL DUE PROCESS VIOLATION

In Count Three, Plaintiffs allege that they "have a due process-protected liberty interest and property interest in petitioning for immediate relative status for Mr. Khonje through filing a Form I-130." ECF 1 ¶¶ 71–74. They allege that their rights to due process were infringed because they did not have a hearing or an opportunity to confront the witnesses against them.

Even assuming, without deciding, that Plaintiffs had a due-process-protected interest in the outcome of the I-130 proceeding, "not every case requires a formal hearing or an opportunity to cross-examine witnesses to satisfy due process." *Ruhe v. Barr*, Civ. No. 2:18-cv-03734-AB, 2019 WL 4492953, at *7 (C.D. Cal. June 26, 2019) (internal citations omitted). To determine the level of process due in any particular case, this Court considers the nature of the private interest at stake, the risk of an erroneous deprivation of that interest under the procedures used, and the government's interest, including the burdens associated with additional procedures. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). Plaintiffs are correct that, applying those factors in some I-130 visa petition cases, courts have found a hearing with cross-examination to be required. *See, e.g.*, *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013) (finding confrontation to be required where the former spouses submitted significant and credible competing evidence about the nature of their marriage). Applying those factors in this case, though, a different result is reached. Here, Misseme received the NOID in September 2017, detailing USCIS's intent to deny the I-130 on the basis of Khonje's fraudulent prior marriage to Maddie. When afforded thirty days to submit documentary evidence to counter the agency's proposed evidence, Plaintiffs submitted nothing of substance, only (1) a letter containing legal argument (not evidence) and (2) a one-sentence declaration from Khonje attesting in a conclusory manner, "Myself and my ex-wife, Sherry Maddie, had a real bona-fide marriage." CAR 29–31. They provided no additional documentation or evidence suggesting that the marriage had been valid, and no declaration from Maddie or Khonje undermining the validity of Maddie's 2014 sworn statement.[3] Given the paucity of evidence Misseme and Khonje

---

[3] This Court notes that in the detailed affidavits submitted for the first time in this litigation, Maddie and Khonje attest that they discussed during the car ride home from the USCIS interviews in 2014 that the investigator had forced Maddie to write a false sworn statement. ECF 16-4 ¶ 25; 16-5 ¶¶ 12–17. Khonje in fact suggests that the traumatic incident at the USCIS interviews caused a dramatic and permanent change in Maddie's behavior. *Id.* ¶¶ 18–19. There is no reason, therefore,

submitted to contest the NOID, the *Mathews* factors do not suggest that USCIS needed to conduct a hearing or allow confrontation to provide an adequate opportunity to be heard.

### D.  BIA STANDARD OF REVIEW

Finally, in Count Four, Plaintiffs argue that the BIA failed to conduct a *de novo* review of "the alien's file," including the alleged sworn statement. ECF 1 ¶¶ 75–81. This argument misreads the plain language of the BIA's opinion, which clearly acknowledges the *de novo* standard of review and states that it "reviewed the record of proceedings, *including*" a list of specific documents.[4] ECF 16-9 at 10. Plaintiffs appear to read that list as exhaustive, rather than exemplary. The BIA also expressly explains that it "considered the testimony and documentary evidence" Plaintiffs submitted. *Id.* And in fact, it cites to specific documents other than those enumerated in its exemplary list of items it reviewed. *See* ECF 16-9 at 10 (citing to Maddie's 2014 sworn statement).

In fact, a similar argument was rejected in *Akinjiola*, where the Court determined that the BIA's statement that it had "reviewed the record of proceedings" rendered Plaintiffs' argument that there had been no *de novo* review "a nonstarter." 2014 WL 641702, at *9–10. Similarly, in this case, the BIA's opinion amply documents its appropriate, *de novo* review of the administrative record before issuing its decision.

---

that Khonje himself would have failed to raise that fact in his 2017 affidavit, which was intended to provide evidence defending the validity of the Maddie-Khonje marriage in the context of Misseme's I-130 petition.

[4] This case, then, is readily distinguishable from other cases where the BIA applied an incorrect legal standard. *See Upatcha v. Sessions*, 849 F.3d 181, 183–84 (4th Cir. 2017) (reversing and remanding BIA order where BIA misidentified its standard of review as "clear error").

**CONCLUSION**

For the reasons set forth above, USCIS's Motion, construed as a Motion for Summary Judgment, ECF 15, must be GRANTED, and this case will be closed. A separate Order follows.


Dated:  January 17, 2023                                     /s/
                                                      Stephanie A. Gallagher
                                                      United States District Judge

13